UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| LEGENDARY LIGHTNING GROUP, INC., | |
| Plaintiff, | **COMPLAINT** |
| - against - | 15 Civ. ____ ( ) |
| OPTIGENEX, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff Legendary Lightning Group, Inc. ("Legendary Lightning"), by its undersigned attorneys, for its complaint against defendant Optigenex, Inc. ("Optigenex"), alleges as follows:

### Nature of the Action

1. This is an action involving the flagrant breach of a contract entered into by Optigenex in connection with an offering of securities that it sold to Legendary Lightning.

2. Optigenex, at the direction of its chief executive Daniel Zwiren ("Zwiren"), has wrongfully deprived Legendary Lightning of the benefits of its status as a 24% shareholder of Optigenex, by failing to deliver the share certificates to which Legendary Lightning is entitled, denying Legendary Lightning its right to participate in the corporate governance of Optigenex, and rendering Legendary Lightning's shares in Optigenex unsaleable by failing to register those shares with the Securities and Exchange Commission in accordance with the parties' agreement.

3. Rather than performing the acts required by the express covenants of the Securities Purchase Agreement between Legendary Lightning and Optigenex, Optigenex has enriched itself and the other Optigenex shareholders, including Zwiren, by taking $600,000 of Legendary Lightning's money and delivering nothing in return. This action for breach of contract seeks to finally hold Optigenex accountable for its misconduct.

4. In or about July 2012, Legendary Lightning and Optigenex entered into a Securities Purchase Agreement (the "SPA") pursuant to which Legendary Lightning agreed to pay $600,000 in consideration for the delivery of 6,955,997 preferred shares of Optigenex, which were convertible to a like number of shares of Optigenex common stock (the "Shares"). A true and correct copy of the fully executed SPA is annexed hereto as Exhibit A.

5. In exchange for the consideration provided by Legendary Lightning, the SPA provided that Optigenex would be required to (a) deliver to Legendary Lightning duly executed certificates representing the Shares; (b) take all necessary actions to ensure that one designee of Legendary Lightning be nominated and appointed to serve on the Optigenex Board of Directors (the "Board"); (c) use commercially reasonable efforts to obtain director and officer liability insurance with a coverage amount of $3,000,000; and (d) prepare and file with the Securities and Exchange Commission a Registration Statement covering the resale of the Shares.

6. As of this date, Optigenex has not fulfilled any of these obligations and is in material breach of the SPA. Specifically, Optigenex has (a) failed to provide any certificates or other proof of Legendary Lightning's ownership of the Shares; (b) affirmatively refused to permit Legendary Lightning's duly appointed designee to serve on the Optigenex Board, and prevented a second designee from participating in any meaningful way as a director; (c) failed to obtain the required director and officer insurance policy; and (d) failed to file any Registration Statement covering the Shares with the Securities and Exchange Commission.

7. As a result of the deliberate acts and omissions of Optigenex, Legendary Lightning has paid $600,000, only to be unlawfully frozen out of Optigenex, wrongfully deprived of its contractual right to participate in the governance of Optigenex, and left holding unsaleable, worthless shares of stock (if indeed the shares exist at all).

8. Legendary Lightning brings this action to enforce its rights under the SPA.

## The Parties

9. Plaintiff Legendary Lightning is a corporation organized and existing under the laws of the State of Texas, with its registered office and principal place of business located at 901 Sam Rayburn Highway, Melissa, Texas 75454.

10. Upon information and belief, Defendant Optigenex is a corporation organized and existing under the laws of the State of Delaware, with its principal office at 333 River Street, Suite 701, Hoboken, NJ 07030.

## Jurisdiction and Venue

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because (i) it is a civil action between citizens of different U.S. states, and (ii) the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

12. This Court has personal jurisdiction over Optigenex because, pursuant to Section 9.4 of the SPA, Optigenex consented to this Court's personal jurisdiction over it for the adjudication of any dispute arising under or in connection with the SPA.

13. Venue is proper in this district because, pursuant to Section 9.4 of the SPA, the parties contractually agreed to litigate disputes related to the SPA in this Court.

**Relevant Facts**

**The Parties Enter Into the**
**Securities Purchase Agreement**

14. In early 2011, the 100% shareholder of Legendary Lightning, Mr. Terry LaCore ("LaCore"), was introduced to the officers and managers of Optigenex, Zwiren and L. Anthony Worth ("Worth").

15. The relationship between the parties at that time centered around the negotiation of a license agreement between Optigenex and a third-party, BHIP Global, Inc. ("BHIP"). Mr. LaCore is the largest shareholder of BHIP, which is an international distributor of primarily health and nutrition products.

16. Optigenex and BHIP subsequently entered into a Supply and Limited Trademark License Agreement dated April 22, 2011.

17. In March 2012, Zwiren and Worth approached LaCore about making a direct investment in Optigenex, to assist with relieving debt overhang of Optigenex and make it a more attractive investment as a "rapid growth" company.

18. During the period between April 2012 and July 2012, the parties negotiated the terms of Legendary Lightning's purchase of equity in Optigenex.

19. On or about July 16, 2012, Legendary Lightning and Optigenex entered into the SPA, pursuant to which Legendary Lightning acquired 6,955,779 preferred shares of Optigenex, which were convertible to a like number of shares of Optigenex common stock.

20. As a result of entering into the SPA, Legendary Lightning became the single largest shareholder of Optigenex, holding approximately 24% of its voting shares.

**The Provisions of the Securities Purchase Agreement**

21. In exchange for the $600,000 of cash consideration received from Legendary Lightning, Optigenex agreed to various covenants which were explicitly stated in the SPA.

22. Section 4.1 of the SPA provided, among other things, that Optigenex would "execute such documents and other papers and take such other further actions as may be reasonably required to carry out the provisions hereof and effectuate the transactions contemplated hereby, and use its best efforts to fulfill or obtain the fulfillment of the conditions to its obligation to effect the Closing."

23. Section 4.3 of the SPA provided that Legendary Lightning would be entitled to one seat on the Board of Directors of Optigenex.  It read as follows:

> Legendary Lightning Director.  [Optigenex] will take all necessary actions to ensure that one designee of Legendary Lightning is nominated and appointed to serve on the [Optigenex] Board of Directors, which shall be comprised of not more than seven (7) directors, with such appointment to take effect as of the Insurance Date. Until such time, Legendary Lightning will have the right to appoint an observer to the [Optigenex] Board of Directors (the "Legendary Lightning Observer"). [Optigenex] will invite the Legendary Lightning Observer to attend all meetings of the [Optigenex] Board of Directors in a nonvoting observer capacity and, in this respect, will give the Legendary Lightning Observer copies of all notices, minutes, consents, and other materials that it provides to its directors at the same time and in the same manner as provided to such directors; provided, however, that the Legendary Lightning Observer will agree to hold in confidence and trust and to act in a fiduciary manner with respect to all information so provided.[1]

24. Legendary Lightning bargained for the inclusion of Section 4.3 in the SPA, and that provision was a material inducement for Legendary Lightning to enter into the SPA.

---

[1] "Insurance Date" was defined in Section 4.5 of the SPA as the date that Optigenex acquired director and officer liability insurance.  As more fully explained below, Optigenex also breached this provision of the Agreement by failing to make any effort whatsoever to obtain such insurance.

25. Under Section 4.5 of the SPA, Optigenex undertook the obligation to obtain director and officer liability insurance, in order protect the directors and officers of Optigenex (including Legendary Lightning's designee) from potential liability:

> As soon as possible after the Closing Date, [Optigenex] shall use commercially reasonable efforts to obtain director and officer liability insurance from a financially sound and reputable insurer with a coverage amount of at least $3,000,000. The date that [Optigenex] obtains such insurance is referred to as the "Insurance Date." [Optigenex] will promptly inform Legendary Lightning of the Insurance Date.

26. In Section 5.1(e) of the SPA, and as an express condition to Legendary Lightning's obligation to effect the closing of the transaction, Optigenex agreed to deliver to Legendary Lightning "duly executed certificates representing the shares being purchased by [Legendary Lightning], unless the Shares are issued in uncertificated form."

27. Because the Shares were being issued pursuant to an exemption from registration under the Securities Act of 1933, Legendary Lightning insisted on the inclusion of language ensuring Optigenex would take all necessary actions to render the Shares capable of being resold by Legendary Lightning should it choose to do so. Optigenex undertook this obligation under the express terms of Section 6.1(a) of the SPA, which read, in pertinent part, as follows:

> <u>Registration.</u>   On or prior to the date (the "Filing Date") that is no later than 100 days following the Closing Date, and in any event prior to the filing of a Registration Statement with the Commission for the holders of any other shares of [Optigenex's] capital stock (each, an "Other Registration Statement"), [Optigenex] must prepare and file with the Commission a Registration Statement covering the resale of the Registrable Securities for an offering to be made on a continuous basis pursuant to Rule 415. The initial Registration Statement to be filed under this Section will be filed to include all of the Registrable Securities … [Optigenex] will cause such Registration Statement to be declared effective under the Securities Act as soon as possible…

28. Legendary Lightning bargained for the inclusion of Section 6.1(a) in the SPA, and that provision was a material inducement for Legendary Lightning to enter into the SPA.

6

**Optigenex Wrongfully Deprives Legendary Lightning**
**of its Rights under the Securities Purchase Agreement and Corporate By-Laws**

29. Prior to the execution of the SPA, Legendary Lightning delivered its consideration for the Shares, in the form of $600,000 cash (the "Share Payment"), to Optigenex's escrow agent, Louis A. Brilleman, Esq. ("Brilleman") pursuant to a separate Escrow Agreement dated May 31, 2012. The Share Payment was distributed by Brilleman to Optigenex and others pursuant to a Funding Release Notice executed by Legendary Lightning on July 13, 2012.

30. Upon the release of the Share Payment to Optigenex, Legendary Lightning had fully performed all of its material obligations under the SPA.

31. Upon information and belief, the Shares were issued in certificated form in or around July of 2012.

32. No share certificates were ever issued by Optigenex to Legendary Lightning, notwithstanding Optigenex's express obligation under Sections 4.1 and 5.1(e) of the SPA and Article XIV of the Optigenex By-Laws to issue such certificates.[2] The failure of Optigenex to deliver share certificates representing the Shares constituted a material breach of Optigenex's obligations under Sections 4.1 and 5.1(a) of the SPA, as well as Article XIV of the By-Laws.

33. Upon information and belief, Zwiren personally ensured that no certificates would be issued to Legendary Lightning, in order to prevent Legendary Lightning from taking any action in its capacity as an Optigenex shareholder.

---

[2] Article XIV of the Optigenex By-Laws provides that "[t]he certificates of stock in the Corporation shall be numbered and shall be entered in the books of the Corporation as they are issued. They shall exhibit the holder's name and number of shares and shall be signed by the Chairman of the Board, the President or a Vice President, and by the Treasurer or an Assistant Treasurer, or the Secretary or an Assistant Secretary…"

34. Legendary Lightning has never been afforded an opportunity to vote its Shares at an annual meeting of the stockholders because, upon information and belief, no annual meeting of the stockholders has been held since at least 2012.

35. As of July 2012, Zwiren was the sole director and sole member of the Board.

36. In or around July of 2012, Legendary Lightning informed Optigenex that Jenifer Grace, Esq. ("Grace") would be its designee to serve on the Optigenex Board.

37. Edward Petraglia ("Petraglia"), Optigenex's general counsel, acting contrary to the express terms of Section 4.3 of the SPA, purported to reject Legendary Lightning's designation of Grace as a Director. Petraglia claimed that Grace's affiliation with BHIP created a "conflict of interest" that disqualified her from to serving as a director of Optigenex.

38. Section 4.3 of the SPA does not provide for any limits on Legendary Lightning's right to designate a director of its own choosing, nor does it provide for any "conflict of interest" exception that would permit Optigenex to reject or exclude Legendary Lightning's designee.

39. Legendary Lightning subsequently provided a replacement designee, John Hammack ("Hammack"), to serve as an alternative to Grace. Optigenex, through its counsel, purported to approve Hammack as Legendary Lightning's designee. Hammack, however, was subsequently provided with no information sufficient to perform his fiduciary duties as a director of Optigenex, and was excluded from any and all meetings of the Board.

40. Upon information and belief, despite having been a "director" of Optigenex for more than three years pursuant to Legendary Lightning's contractual rights under the SPA, as of the date of this Complaint Hammack has never once received notice of a meeting of the Optigenex Board, nor has he received minutes of any board meetings held outside his presence.

41. Upon information and belief, Zwiren has deliberately prevented Hammack from receiving information in order to maintain complete personal control over the Optigenex Board.

42. Optigenex's purported rejection of Ms. Grace's designation as the Legendary Lightning Director, and its subsequent exclusion of Hammack from any meaningful participation as member of the Board, constituted material breaches of Section 4.3 of the SPA.

43. Upon information and belief, Optigenex has made no effort whatsoever to obtain director and officer liability insurance in the amount of $3,000,000 as required by the SPA. This failure constituted a material breach of Optigenex's obligations under Section 4.5 of the SPA.

44. In or around July of 2013, Zwiren contacted LaCore by telephone and informed him that Optigenex would not file a Registration Statement with the SEC, notwithstanding its unqualified obligation to do so pursuant to Section 6.1(a) of the SPA.

45. Optigenex has expressly repudiated its obligations under Section 6.1 of the SPA and is in material breach of those obligations.

46. Optigenex's failure to file a Registration Statement covering the Shares has made it effectively impossible for Legendary Lightning to resell its shares, because no exemption for the resale of those shares exists under the Securities Act of 1933. As a result of Optigenex's failure to file a Registration Statement, the 6,955,779 Shares held by Legendary Lightning have been rendered unsaleable and are now effectively worthless.

**FIRST CLAIM FOR RELIEF**

**Breach of Contract – Damages**

47. Legendary Lightning repeats and realleges each of the allegations contained in the preceding paragraphs as though fully set forth herein.

48. Optigenex and Legendary Lightning are both parties to the SPA.

49. Legendary Lightning has substantially performed all of its obligations pursuant to the SPA.

50. Optigenex has breached the SPA by (a) failing to provide any certificates or other proof of Legendary Lightning's ownership of the Shares as required by Sections 4.1 and 5.1 of the SPA; (b) refusing to permit Ms. Grace to serve on the Optigenex Board, and preventing Mr. Hammack from participating in any meaningful way as a director in violation of Section 4.3 of the SPA; (c) failing to obtain director and officer liability insurance coverage in the amount required by Section 4.5 of the SPA; and (d) failing to file a Registration Statement covering the Shares with the Securities and Exchange Commission, as required by Section 6.1 of the SPA.

51. As a result of the foregoing, Optigenex has materially breached Sections 4.1, 4.3, 4.5, 5.1 and 6.1 of the SPA, as well as Article XIV of the Optigenex By-Laws.

52. Legendary Lightning has suffered and continues to suffer damages as a direct and proximate result of Optigenex's breaches.

## SECOND CLAIM FOR RELIEF

### Breach of Contract – Specific Performance

53. Legendary Lightning repeats and realleges each of the allegations contained in the preceding paragraphs as though fully set forth herein.

54. Optigenex and Legendary Lightning are both parties to the SPA.

55. Legendary Lightning has substantially performed all of its obligations pursuant to the SPA.

56. Optigenex has breached the SPA by (a) failing to provide any certificates or other proof of Legendary Lightning's ownership of the Shares as required by Sections 4.1 and 5.1 of the SPA; (b) refusing to permit Ms. Grace to serve on the Optigenex Board, and preventing Mr.

Hammack from participating in any meaningful way as a director in violation of Section 4.3 of the SPA; (c) failing to obtain director and officer liability insurance coverage in the amount required by Section 4.5 of the SPA; and (d) failing to file a Registration Statement covering the Shares with the Securities and Exchange Commission, as required by Section 6.1 of the SPA.

57.     Legendary Lightning is entitled to an order compelling Optigenex to, on pain of contempt: (a) issue share certificates representing the Shares to Optigenex; (b) provide Legendary Lightning's chosen designee to the Board with all notices, minutes, consents, and other materials that are provided to all directors at the same time and in the same manner as provided to other directors, and afford such person the ability to fully participate in all matters that may come before the Optigenex Board; (c) take immediate action to obtain director and officer liability insurance with a coverage amount of $3,000,000; and (d) file a Registration Statement covering the Shares with the Securities and Exchange Commission.

**WHEREFORE**, Legendary Lightning demands judgment against Optigenex as follows:

    (a)    on the First Claim for Relief, damages in an amount to be determined at trial; and;

    (b)    on the Second Claim for Relief, specific performance of Optigenex's obligations under Sections 4.1, 4.3, 4.5, 5.1 and 6.1 of the SPA; and

    (c)    such other and further relief as the Court deems just and appropriate, including an award of costs, expenses, and the reasonable attorneys' fees incurred in connection with this proceeding.

Dated: November 11, 2015

**GRACE FIRM, PLLC**

By: _____/s/ Jenifer Grace_____
       Jenifer Grace

901 Sam Rayburn Highway
Melissa, Texas 75434
Telephone: (972) 439-1750
Facsimile: (800) 335-2901
Email: Jenifer.grace@gracefirm.com

(Pro Hac Vice Application Pending)

**KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.**

By: _____/s/ Norris D. Wolff_____
       Norris D. Wolff
       Joshua K. Bromberg

551 Fifth Avenue, 18th Floor
New York, New York 10176
Telephone: (212) 986-6000
Facsimile: (212) 986-8866
Email: nwolff@KKWC.com
       jbromberg@KKWC.com

*Attorneys for Plaintiff*
**Legendary Lightning Group, Inc.**